## DAVID RANKIN *et al.*

*v.*

### GEORGE J. SHEPHARDSON.

BAILMENT—*liability of parties becoming partners with bailee.* Where a party stores grain in the cribs of one buying grain for himself, but which grain is simply taken for storage and not mixed with other grain of the bailee, and the bailee afterwards, upon entering into partnership with others in the grain business, receives credit for the grain so stored with him as so much capital, the title to the corn will not pass to them, as in the case of a purchase from a warehouseman when the corn stored is commingled with other grain, but the firm will sustain the same relation to the bailor as the original bailee, and on a sale of such corn by the firm all its members will be liable to the bailor for the proceeds.

APPEAL from the Circuit Court of Kankakee county; the Hon. N. J. PILLSBURY, Judge, presiding.

This was an action of assumpsit, brought by George J. Shephardson, against Frank A. Thompson, David Rankin and Charles E. Henderson, for corn sold and delivered by the

446      RANKIN *et al. v.* SHEPHARDSON.     [Sept. T.

Opinion of the Court.

plaintiff to the defendants, with the common counts. The defendants Rankin and Henderson pleaded the general issue, and a sworn plea denying joint liability. Thompson was defaulted. A trial was had, resulting in a verdict in favor of the plaintiff, against the defendants, for $136. The plaintiff entered a *remittitur* on all above $118, for which sum the court rendered judgment. Rankin and Henderson prosecuted this appeal.

Mr. JAMES N. ORR, for the appellants.

Mr. CHARLES H. WOOD, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Concerning the principal facts of this case, there is no disagreement between the parties. Thompson, one of the defendants, was engaged in buying grain on his own account, and in the fall of 1872 he received in store, in his cribs, a quantity of corn for plaintiff at and for a rate of storage agreed upon at the time. The tenant of plaintiff commenced to deliver corn for him about the middle of November of that year, taking checks for the same—the last of which seems to have been issued on the 13th of December. On the 14th day of December of the same year, Thompson entered into copartnership with his co-defendants in this action, for the purpose of continuing the business he had already inaugurated. The corn on hands in the cribs was estimated, and transferred to the new firm, Thompson receiving credit for it as so much capital on the books of the firm. It seems almost certain that plaintiff's corn was all on hands and transferred to the new firm when organized—at least, the evidence would warrant the jury in finding that such was the fact. The firm of which appellants were members, with Thompson, were simply successors to him, and, on principle, it would appear they occupied the same relation to the grain stored in the cribs that Thompson himself did. That relation still existing when the grain was sold and the

money was received for it, they became equally responsible with Thompson for the proceeds to the owner.

The case bears no analogy to the sale of grain on store in a warehouse, that had been commingled with owner's consent, in the usual course of trade. In such cases the title is always understood to pass to the buyer who, in good faith, paid for the same to the warehouseman as the owner. Here, there was no sale in the usual course of trade. Taking credit for the corn on hand with his firm, as so much capital stock, is not a sale, in the strict sense of the term. In one sense, Thompson was still the owner, and although appellants had become interested with him as partners, it was still corn in store for plaintiff. It was never moved or transferred from the place of storage until after it was sold by the firm of which appellants were members, and no reason is perceived why appellants are not liable to the owner for the proceeds of the corn, with Thompson, the original bailee.

The judgment must be affirmed.

*Judgment affirmed.*