## Ashland Block Association v. Edward Thompson Co.

1. SALES—*Delivery by an Unpaid Vendor.*—A delivery of personal property by an unpaid vendor under a contract of sale passes the title so far that an innocent purchaser from the vendee will be protected, irrespective of the terms of the contract of sale or the intention of the parties.

2. SAME—*Possession and Ownership.*—To suffer the real ownership of personal property to be in one person and without notice to the world, the ostensible ownership in another gives a false credit to the latter and is liable to work an injury to third persons.

Assumpsit, for merchandise sold and delivered. Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed April 22, 1901.

Statement.—Appellee brought this suit to recover from appellant the value of a set of the first edition of the American and English Encyclopædia of Law. The books were placed by appellee, the publisher of them, in the possession of one Buell, a lawyer, and they had been bought by appellant upon foreclosure sale of a mortgage made by said Buell. Appellant contends that the transaction by which Buell acquired the possession of the books was a sale, and that therefore Buell, as vendee in possession, had power to convey a good title through the mortgage. Appellee contends that it never sold the books to Buell, but merely loaned them to him, and that therefore Buell never had any power to convey the books to another. The contract between appellee and Buell was, in its substantial parts, as follows:

" No. 2871. To Edward Thompson Company, C. W. Dumont, Western Sales Agent, 115 Monroe St., Chicago, Illinois, April 1, 1896:

Please deliver to me, carriage paid, as published, the second edition of the American and English Encyclopædia of Law, for which I agree to pay you $7.50 per volume. The publishers hereby agree to complete the said second edition in not to exceed thirty volumes, exclusive of index. In consideration of the loan to me of the twenty-nine vol-

umes and two indexes of the first edition during the period of publication of the second edition, I hereby agree upon delivery of said first edition to pay you $6 cash and my notes for $6 each, without interest, payable monthly, and running from one to thirty months, both inclusive; it being understood and agreed that said amounts are advances paid on the second edition of the American and English Encyclopædia of Law.

I further agree to return to the said Edward Thompson Company the volumes of the first edition loaned to me as fast as they shall be replaced by the volumes of the second edition. In addition to the cash payment and notes above mentioned, I agree to pay $1.50 upon the delivery to me of each volume of the second edition, provided, however, the total amount paid under this contract shall not exceed the price of the whole number of volumes, including the index of the second edition when completed; and I further agree, and it is hereby made a part of this contract, that the title to all of the above described books shall remain in the Edward Thompson Company until said note or notes are all paid in full, and if default shall be made in the payment of any of said notes and shall continue for thirty days, all of the above notes shall immediately become due, and the Edward Thompson Company shall have the absolute right to retake with or without process of law all of said books into their possession, provided, however, that if said Edward Thompson Company shall at any time exercise their said rights to retake said books, the purchaser shall have the privilege within one year from the time of said retaking, of paying the amount unpaid with interest at six per cent per annum, including the cost and expenses incurred in the course of said retaking, and of receiving back said books, or in lieu thereof a new set in like binding, as said Edward Thompson Company may elect. This order is subject to the approval of the Edward Thompson Company.

It is hereby understood that any addition or alteration to this contract or repetition made shall not affect this contract or bind the parties hereto unless such addition, alteration or repetition is herein written, as this contract is a complete embodiment of the terms mutually agreed upon.

(Signed) GEORGE C. BUELL.
C. W. DUMONT,
Mngr. of Western Sales Office.
W. D. LAWRENCE, Agent."

Buell, having executed a chattel mortgage upon the

books of the first edition, which were delivered to him under this contract, and having defaulted in payments secured by the mortgage, there was a foreclosure, and appellant bought the books at the foreclosure sale. Appellee thereafter demanded the books of appellant, and upon refusal to turn them over, brought this suit to recover their value.

The cause was submitted to the court without a jury, and the trial resulted in a finding and judgment for appellee.

WILLIAM H. ARTHUR and JAMES F. BOLAND, attorneys for appellant.

SIGMUND ZEISLER, attorney for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

The decisive question presented in this case is as to whether Buell in his transaction with appellee became a conditional vendee of the books or a mere bailee. If Buell was a vendee, then the attempt to effect a reservation of title in the vendor, appellee, would be ineffectual as against the claim of appellant. For the rule is well settled that a delivery of personal property by an unpaid vendor under a contract of sale passes the title so far that an innocent purchaser from the vendee will be protected, irrespective of the terms of the contract of sale or the intentions of the parties. Jennings v. Gage, 13 Ill. 610; Chicago Dock Co. v. Foster, 48 Ill. 507; Young v. Bradley, 68 Ill. 553; Cold Storage Co. v. Bankers Nat. Bank, 176 Ill. 260.

And the same protection is accorded to a mortgagee who acquires from the vendee in possession under like conditions.

The reason of the rule is that to suffer, without notice to the world, the real ownership to be in one person and the ostensible ownership in another, gives a false credit to the latter, and in this way works an injury to third persons. Chickering v. Bastress, 130 Ill. 206.

Decisions in other States which are cited can not govern.

The doctrine as differently announced in some other juris-
diction and as adhered to in this State is very thoroughly
compared and considered in Harkness v. Russell, 118 U. S.
663.

But the doctrine that a loss of title to goods, as between
parties equally innocent, should fall upon him who has vol-
untarily transferred to another such possession as enabled
him to commit fraud, has no application to simple bail-
ments. It is not the law that by a simple bailment, the
bailor is subjected to the hazard of purchase by an innocent
party from the bailee in possession. In order to make
the rule as announced in the decision above cited applicable
to any case, it must appear that there is something more
than a mere bailment, viz., a sale.

We have, therefore, only to determine whether there was
here a conditional sale of the books in question by appellee
to Buell, or a mere loan of them, *i. e.*, a bailment. We are
of the opinion that it was a bailment. Doubtless a sale was
contemplated and contracted in the transaction evidenced
by the contract between appellee and Buell, but it was a
sale of the second edition of the books, not of the books
here in question. The books of the first edition, for the
value of which the recovery is here had, were not sold by
the terms of the written contract. The second edition was
sold. It was clearly the intent of the parties to the con-
tract that the books of the first edition should be loaned by
appellee to Buell until such time as the books of the second
edition were forthcoming, and then returned to appellee,
the owner. And this intention is expressed by the terms of
the contract. Buell never became the owner; he was merely
the bailee. Nor was it contemplated by the contract of the
parties that he should ever, under any condition, become
the owner of these books. In each of the Illinois cases
relied upon by counsel for appellant, it will be found that
there was in some way, under whatever restrictions, a con-
templation of a future ownership by the party put into
possession.

If there appeared to have been a choice permitted to

Buell by the contract, by exercise of which he might elect to retain the books in question and perform conditions of payment, then the elements of a conditional sale would be presented. But here there was no such alternative. The obligation was to return the specific articles which were the subject of the bailment, viz., the books in question. Therefore this transaction can not be held to be a sale, and must be treated as a simple bailment. Chickering v. Bastress, 130 Ill. 206.

There is no question here of an estoppel upon appellee, as invoked by counsel for appellant. There is no evidence that appellee was even aware of the actions of Buell by which he treated these books as his own. Nor, on the other hand, is there any evidence that appellant was aware that upon one of the pages of each volume of the books there was printed the provision that " this book is the property of the Edward Thompson Company, and is only loaned to the subscriber to the new edition of the American and English Encyclopædia of Law." But the provision, whether known to appellant or not, is competent as evidence of the real nature of the transaction. For, if the transaction was in fact a bailment only, then whether that fact were known to appellant or not, the bailor is in law entitled to his goods as against appellant, to whom they were wrongfully conveyed by the bailee.

We are of opinion that the transaction constituted a bailment only. Therefore the judgment of the learned trial court is right and should be affirmed.