**Morris Shapera, Plaintiff in Error, v. Livingston W. Fargo and Peter M. Hoffman, Sheriff, Defendants in Error.**

### Gen. No. 30,412.

1. REPLEVIN—*sufficiency of evidence to show estoppel of plaintiff to claim title to replevied property*. Plaintiff in an action of replevin was estopped to claim title to a machine replevied from a judgment creditor of a corporation of which he was president where he had permitted the machine to be displayed by the corporation in its show rooms under circumstances calculated to induce creditors and others to believe that title to the machine was in the corporation.

2. ESTOPPEL—*essential elements of estoppel in pais*. An estoppel *in pais* arises whenever one, by his conduct, affirmative or nega-

tive, intentionally or through culpable negligence induces another to believe and have confidence in certain material facts, and the latter, having the right to do so, relies and acts thereon, and is, as a reasonable and inevitable consequence, misled to his injury.

Error by plaintiff to the Municipal Court of Chicago; the Hon. C. F. McKINLEY, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Affirmed. Opinion filed March 10, 1926.

BROWN, BROWN & BROWN, for plaintiff in error.

WINSTON, STRAWN & SHAW, for defendants in error; JAMES H. CARTWRIGHT and PAUL H. MOORE, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The defendant, Peter M. Hoffman, sheriff, having levied upon a cloth spreading machine under a judgment in favor of the defendant, Livingston W. Fargo, and against the Victor Electric Automatic Cloth Spreading Machine & Manufacturing Company (hereafter called the Victor Company), for the sum of $1,770, and the plaintiff, Morris Shapera, having, thereafter, on December 11, 1924, replevied the cloth spreading machine, there was a trial of the replevin suit, and on March 25, 1925, a judgment by the trial court, without a jury, finding that the right to possession of the property replevied was in the defendants. Pursuant to that finding, judgment was entered that the defendants have and recover the possession of the property, and that a writ of *retorno habendo* issue to that effect. This appeal is from that judgment.

It is the theory of the plaintiff that he bought the machine in question from one Harry Yeo on March 26, 1923, for $1,500, and that, although he leased the use of it to the Victor Company, and it was set up for display purposes on premises rented from the defendant by the Victor Company, it remained and was his

personal property at the time the levy was made by the sheriff under the execution.

On the other hand, it is the theory of the defendants that they rented certain space in a building at 304 West Jackson Boulevard, Chicago, to the Victor Company, of which the plaintiff was president; that the machine in question was installed in the premises which were rented; that it had conspicuously upon it two separate metal plates, one about four inches long and two inches wide, the other two and one-half inches long by one inch wide, riveted to the metal part of the machine and in plain sight, and bearing the words, respectively:

"PROPERTY OF
VICTOR
ELECTRIC CLOTH SPREADING
MACHINE CO.
CHICAGO, ILL."

"VICTOR CLOTH SPREADING
MACHINE CO.
Pat'd U. S. A. and in Foreign Countries.
Other U. S. A. and Foreign Pat's Pend."

that the plaintiff permitted the Victor Company to hold itself out as the owner of the machine in question; that the defendant Fargo permitted the Victor Company to remain in the premises after it was in arrears in rent, upon the faith of the apparent title of that company in the machine—for the display of which the premises involved were rented—and that at the time of the levy, the plaintiff was estopped from asserting or claiming title to the machine.

The plaintiff, Morris Shapera, who claimed the machine as his own property, and who was president of the Victor Company, the judgment debtor, did not appear as a witness.

The testimony of his brother, Frank E. Shapera, was substantially as follows:  On March 26, 1923, a

contract in writing, called a conditional sale agreement, was made between the plaintiff and Harry Yeo, whereby the latter sold to the former, at Muncie, Indiana, for $1,500, one cloth spreading machine and 70 feet sectional table, and all appliances connected therewith, which machine was manufactured by Yeo under the Shapera patent. On the same day, the plaintiff gave to Yeo a note for $1,500 for the machine in question, which note was paid on August 17, 1923. Subsequently, the machine was brought to Chicago for display purposes, and set up on the premises at 304 West Jackson Boulevard. On February 23, 1924, a written agreement was made between the plaintiff and the Victor Company reciting that the corporation was organized under the laws of the State of Delaware for the purpose of manufacturing, leasing and selling cloth piling machines, and giving the Victor Company, as license, sole and exclusive right to manufacture, sell and lease cloth piling machines made under certain patents. That contract was signed by the plaintiff, Morris L. Shapera, and the Victor Company, by Morris L. Shapera, president. He, the witness, was secretary of the Victor Company. The cloth spreading machine in question was the only one of its kind that was built. It was brought to Chicago on a truck from Muncie, and Mr. Shapera put it up on the premises rented at 304 West Jackson Boulevard, for display purposes, and it was there for something over a year. It was turned over to the Victor Company under the contract between that company and the plaintiff. His brother, the plaintiff, visited the premises on West Jackson Boulevard, where the machine was set up, about half a dozen times. It had a long table about 60 feet long and about 60 inches wide, and extended practically the full length of the floor of the premises that the company occupied at 304 West Jackson Boulevard. There was a stamp on one of the gears showing that the machine was patented, or that a patent

was applied for. When asked if there was a steel plate on the machine with the words "Property of the Victor Electric Automatic Cloth Spreading Machine Company," he answered that he never noticed it; that he did not know, he never saw it. He saw the machine on the premises 20 or 30 times, and looked over the machine when there were people there who were interested, and if there was anything on the side of the machine he would have seen it.

There was introduced in evidence a memorandum of sale showing that on March 26, 1923, Yeo sold to the plaintiff the cloth spreading machine for $1,500. It also showed that on August 17, 1923, it was paid for.

It was admitted that the defendant, Fargo, had a judgment against the Victor Company in the sum of $1,770, and that an execution was taken out and levied upon the machine in question.

At the close of the testimony of Frank E. Shapera, the plaintiff rested.

The defendant, Fargo, offered in evidence the testimony of Lowenthal, at one time secretary of the Victor Company; Mateer, who acted as an agent for Fargo in regard to the collection of rents for the property in question, and Golde, who acted at one time as attorney for the Victor Company.

The evidence of Lowenthal is to the effect that he was secretary of the Victor Company after its organization; that one Donahue, one of the stockholders and organizers of the Victor Company, gave him $2,000, and that of the $2,000 he gave $1,000 to the plaintiff, and used the other for the purpose of organization; that he deposited the $2,000 check to his own account; that he did not know whether the corporation owed the plaintiff any money at that time or not; that he gave the plaintiff a check in person for $1,000 on or about March 26, 1923; that he generally followed Donahue's directions; that at one time he was a stockholder, but did not get a certificate of stock; that the

company started to operate on the theory that it would not sell but give a license on a royalty basis; that the plaintiff never made a statement to him as to the title of the machine.

The evidence of Golde is to the effect that he was the attorney for the Victor Company, and had certain communications as such with the secretary of state concerning the corporation; that an application to sell securities for the Victor Company was never filed nor accepted, although one was prepared in his office; that the only assets, as far as he knew, that the Victor Company possessed was an exclusive license agreement to manufacture machines according to various patents that were issued; that the application was signed by the plaintiff and his brother.

In the application, which is signed and sworn to by the plaintiff and his brother (April 30, 1924), it is recited under the statement of consideration received for the outstanding securities, after reciting certain shares of capital stock, "also dyes, cuts and cloth spreading machine," and under the title, "Detailed Statement of Proposed Plan of Business of Issuer," "Issuer has one machine in operation and expects shortly to begin the manufacture of a large number of these machines, and thereafter immediately lease the same to interested parties," and on the balance sheet showing assets, there is the item, "Machinery and equipment, $1,650.00." That exhibit also shows that 25,000 shares of the common stock, of the par value of $25 per share, were issued to the plaintiff in consideration of a certain license agreement. The application referred to was prepared by him and sent on to the secretary of state in order to get his opinion and approval; but the plans were changed because the secretary of state refused to issue the license based upon the exclusive license agreement, and demanded that the patent be assigned to the company.

The evidence of the defendant Fargo is to the fol-

lowing effect: That as trustee of the building at 304 West Jackson Boulevard, on August 30, 1923, he leased, in writing, to the Victor Company a part of the premises at 304 West Jackson Boulevard; that very frequently he made an inspection of the machine in question, and whenever he looked at it he saw the marks of identification on it concerning the title; that metal labels, conspicuously placed, were affixed to the machine; that one of them bore the words: "Property of the Victor Electric Cloth Spreading Machine Company, Chicago, Ill.," and the other referred to certain patents; that he frequently spoke to the Victor Company "people" on "the subject matter of this suit," while it was in the premises which were leased; that the company began to get in arrears as to the rent; that he let the rent run in arrears from June to December, 1924, before beginning suit; that no rent was paid from June until December, 1924; that he then began suit against the company and obtained judgment.

The evidence of Darre, the janitor of the building, is to the effect that the Victor Company occupied the fourth floor, and had installed there a cloth spreading machine, which had two identifying marks, one riveted on one of the running boards, and the other on the side of the machine; that he was not sure that the plates were on there at the time they first moved into the premises, but knew that they were on there right after, when they started running.

The evidence of Mateer, who acted as agent for the defendant and collected the rents for the property in question, is to the effect that it was leased to the Victor Company; that he visited the premises in order "to obtain the license number of the property"; that he inspected the machine and found two metal plates on it, made a copy and diagram of them in the latter part of 1924, and gave the information to the defend-

ant; that he made the copy on the premises from what was on the machine; that one was on the center of the drum, securely fastened, and was four by two inches; that the other was a little lower down, plainly visible; that the latter was two and a half inches long by one inch wide; that the larger plate contained the words, "Property of Victor Electric Cloth Spreading Machine Co., Chicago, Illinois"; that he was on the premises once before, sometime in November, 1924; that the machine was there at that time; that at that time the place was closed and the defendant had the keys.

There was offered in evidence the minutes of the meeting of the board of directors of the Victor Company, held on July 9, 1923, showing the acceptance by the Victor Company of an offer by the plaintiff to assign certain patents to the Victor Company in consideration of 20,000 shares of common stock, of the par value of $25. Those minutes, also, show that the president and secretary were authorized to secure premises "for the purpose of displaying the machine in Chicago."

The foregoing being the evidence as disclosed by the record, the question arises whether the plaintiff proved that he had title to, and the right to possession of the machine, and whether if he did prove such title and right, his conduct was such that it showed he was estopped from asserting his title as against the levy of the defendant. The trial judge having found for the defendant, we are asked by the plaintiff to hold that his judgment was against the manifest weight of the evidence.

Does the evidence prove that the plaintiff was estopped to claim that his rights of ownership were paramount? The machine was brought to Chicago on a truck from Muncie, Indiana, and put upon the premises in question for display purposes, and was there considerably over a year. The evidence of the brother, though slightly ambiguous, intimates that it was put

up by the plaintiff. The machine occupied practically all the space which was leased by the defendant to the Victor Company. The defendant, as trustee of the building, leased the space in question to the Victor Company on August 30, 1923. His evidence is that he frequently made an inspection of the machine and that whenever he looked at it he saw the marks of identification on it concerning the title; that it had a metal label on it which bore the words, "Property of the Victor Electric Automatic Cloth Spreading Machine Company, Chicago, Ill." The evidence is that no rent was paid from June to December, 1924, and that he then began suit against the Victor Company, and obtained the judgment, by reason of which the levy was made.

Mateer, the defendant's rent collector, and Darre, the janitor of the building, both corroborate the defendant as to there being two identifying plates on the machine. Mateer said that in December, 1924, he copied both plates, and that the larger one contained the words, "Property of the Victor Electric Cloth Spreading Machine Co." He had been on the premises once before, some time in November. He further said that he told the defendant what he had found concerning the plates. There is practically no evidence contradicting that of the defendant, Mateer and Darre, save the ambiguous testimony of Frank E. Shapera, the brother of the plaintiff. When he was asked about a steel plate on the machine with the words, "Property of the Victor Electric Cloth Spreading Machine Company," he answered that he never noticed it; that he did not know; he never saw it, although he saw the machine on the premises 20 or 30 times.

In our judgment, the evidence referred to quite obviously establishes an estoppel as against the plaintiff. The oft quoted words of Lord Coke that "a man's own act stoppeth up his mouth to allege or

plead the truth," are still good law. A host of authorities, modern as well as ancient, might be cited in their support.

It may be said as a general statement of law that an equitable estoppel or estoppel *in pais* which is now available at law as well as in equity, arises whenever one by his conduct, affirmative or negative, intentionally or through culpable negligence, induces another to believe and have confidence in certain material facts, and the latter having the right to do so, relies and acts thereon, and is, as a reasonable and inevitable consequence, misled, to his injury.

The cloth spreading machine was set up solely for the purpose of display and examination; it occupied, alone, substantially all the rented space, and showed conspicuously, judging from the size of the metal placard, that it was desired by its possessor that all who saw it should be notified and informed that it was "The Property of the Victor Electric Cloth Spreading Machine Co." It may be justly asked, why the special emphasis as to the ownership, made by the plaintiff and the Victor Company, if it were not true? And it then may be asked, also, why now the seeming stultification and repudiation of such a public representation? It is not a case where the acts *in pais* were secretive or casual or ambiguous, or really controverted, but, on the contrary, one where there was a voluntary, public, categorical announcement of ownership, made, undoubtedly, with the knowledge of the plaintiff, who was at the time, himself president of the Victor Company. Even admitting that the machine was the plaintiff's property when it was installed, and that it remained his as regards his personal contractual relations with the Victor Company —although the evidence gives rise to a suspicion to the contrary—it does not follow, because rent had accumulated and the Victor Company became in arrears, that he was then entitled as regards third persons,

among them the landlord, to repudiate the holding out, of which he knew, and successfully claim personal ownership. It is not claimed by the plaintiff that the Victor Company was wrongfully in possession. Its right to possession is admitted by the plaintiff. That differentiates these facts from those in *Drain v. La-Grange State Bank,* 303 Ill. 330. In that case, however, Mr. Justice Cartwright said: "The estoppel does not depend upon where the actual title is, but rests upon the act of the real owner, which precludes him from disputing the existence of a title which he has caused or allowed to appear to be vested in another. If a vendor of a chattel delivers it to a vendee or allows him to have possession of the chattel before payment of the purchase price and to have all the indicia of ownership, retaining, however, a secret lien for payment, he cannot assert his right against a judgment creditor of the vendee without notice before a levy is made. An innocent purchaser will be protected, without regard to the terms of the contract of sale, where the appearance of ownership is in one while the title is really in another or there is a secret lien. (*Van Duzor v. Allen,* 90 Ill. 499; *Chickering v. Bastress,* 130 Ill. 206; *Union Stock Yard and Transit Co. v. Mallory,* 157 Ill. 554.)" *Charles Moe Co. v. J. H. Logue Co.,* 108 Ill. App. 128.

The plaintiff knew whose property it was; he permitted the placard announcing ownership in the Victor Company to be exhibited on the machine; it must be presumed that he exhibited it for the purpose of giving out information; he knew of the lease and the accrual of rent; he is presumed to have known the normal inference the landlord would draw from the placard on the machine; the landlord knew of the representations, and saw the placard frequently and had the right to infer, and may be presumed to have inferred, that the representation of ownership was true; and having that knowledge he allowed the rent

from June to December, 1924, to become in arrears without distraint or suit. Such being the situation, it seems but reasonable and equitable to hold that the plaintiff is estopped, and is not now entitled to stultify himself and repudiate the representations which he either made or connived at, and so commit a fraud by taking advantage of his own wrong.

Further, in addition to the evidence referred to on the subject of estoppel, there is, also, some significant evidence in certain statements in the tentative application which was sent to the secretary of state for approval, and which was signed and sworn to by the plaintiff and his brother, which evidence is strikingly consistent with the announcement of the placard that the property actually was that of the Victor Company. In that document, where the consideration is stated, are the words, "also dyes, cuts and cloth spreading machine." That representation would suggest that the plaintiff either had turned over or intended to turn over the title and possession of the machine to the Victor Company, but apart from that, and the question of actual ownership as between the plaintiff and the Victor Company, we are of the opinion that, on the question of estoppel, the evidence against the plaintiff is so strong and overwhelming that we would not be justified in overriding the judgment of the trial judge.

Counsel for the plaintiff has cited *Peters v. Smith,* 42 Ill. 417; *Drain v. LaGrange State Bank,* 303 Ill. 331; *Kiewel v. Tanner,* 105 Minn. 50, and other cases in support of the contention that the evidence did not establish an estoppel. We have examined the cases referred to, but we do not find that any of them holds contrary to what we have above set forth. *Williams v. Fletcher,* 129 Ill. 356; *Cowdrey v. Vandenburgh,* 101 U. S. 572; *O'Connor v. Clark,* 170 Pa. 318, 32 Atl. 1029. Bigelow's Law of Estoppel, p. 556, 5th Ed.

Considering, therefore, what the record discloses

and what the law is, we feel bound to hold that the judgment of the trial judge was entirely justified. Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

Thomson, P. J., and O'Connor, J., concur.